UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DENNIS PREJEAN ET AL. | CIVIL ACTION |
| VERSUS | NO. 12-1045 |
| | c/w 12-1716, 12-1533 |
| O'BRIEN'S RESPONSE MANAGEMENT, INC. | SECTION "J"(2) |

**This document applies to No. 12-1045**

## REPORT AND RECOMMENDATION

Dennis Prejean, individually on and on behalf of all similarly situated oil spill response workers, filed this putative collective action under the Fair Labor Standards Act (the "FLSA"). 29 U.S.C. § 216(b). Additional plaintiffs have filed consent forms to opt in, bringing the total number of plaintiffs to 49 as of September 20, 2013.

This action arose from the emergency response to the massive oil spill caused by the explosion of the BP Deepwater Horizon offshore oil rig in the Gulf of Mexico in April 2010. Defendant, O'Brien's Response Management, Inc. ("O'Brien's"), contracted with BP to provide skilled personnel to assist in the cleanup and containment efforts in response to the oil spill that affected five Gulf Coast states. O'Brien's hired Prejean and each of the opt-in plaintiffs to work on those efforts.

Prejean and each opt-in plaintiff signed a "Teaming Agreement" with O'Brien's, in which they acknowledged that they were independent contractors who would be paid a set day rate, with no payments for overtime work. See, e.g., Plaintiff's Exh. 2, Teaming Agreement between Prejean and O'Brien's. On January 1, 2011, O'Brien's reclassified

as employees all workers whom it had hired as independent contractors who were still working on the BP oil spill project.

Plaintiff alleges that O'Brien's violated the FLSA because it improperly classified him and similarly situated persons as independent contractors, rather than as employees, at all times <u>before</u> January 1, 2011. Prejean contends that defendant failed to pay him and the other workers overtime pay that was owed to them as employees for hours they worked in excess of 40 hours per week, pursuant to the FLSA.

Plaintiff filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA, Record Doc. No. 19, which the presiding district judge referred to me for report and recommendation. Record Doc. No. 15. Prejean seeks conditional certification of a collective action, approval of a proposed notice of collective action to be sent to potential members and a schedule for members to opt in to the action. Plaintiff asks that defendant be compelled to provide him with contact information, including telephone numbers and e-mail addresses, for all potential class members within ten (10) days of conditional certification, and seeks permission for putative members to provide their consents by e-mail or electronically signed documents.

Defendant filed a timely memorandum in opposition. Record Doc. No. 21. Plaintiff received leave to file a reply memorandum. Record Doc. Nos. 22, 23, 24.

Having considered the record, the complaint, the submissions and arguments of the parties and the applicable law, IT IS RECOMMENDED that plaintiff's motion to

certify a collective class be GRANTED, but only as to "conditional certification," as discussed below.

I. CONDITIONAL CERTIFICATION

Plaintiff alleges that O'Brien's violated the FLSA by classifying him and similarly situated workers as independent contractors, rather than as employees, and by paying them a set day rate for each day worked without paying overtime for work in excess of 40 hours per week. To support his motion, Prejean submitted the declarations under penalty of perjury of himself and 19 opt in plaintiffs, along with each plaintiff's signed Teaming Agreement and a representative time sheet showing that each one worked 12-hour days (or more) during certain time periods and for more than 40 hours in a particular work week.

As to overtime wages, the FLSA provides in relevant part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) (emphasis added).

O'Brien's denies that it was the employer of Prejean or other, similarly situated workers prior to January 1, 2011, because these workers were actually independent

3

contractors. Defendant denies that it classified the workers improperly and denies that it owes any overtime wages to them.

Section 216(b) of the FLSA grants employees a collective cause of action to recover overtime compensation and liquidated damages against an employer who violates Section 207.

> Any <u>employer</u> who violates the provisions of . . . section 207 of this title shall be liable to the <u>employee or employees</u> affected in the amount of their . . . unpaid overtime compensation . . . , and in an additional equal amount as liquidated damages. . . .  An action to recover the liability prescribed in either of the preceding sentences may be maintained against any <u>employer</u> (including a public agency) in any Federal or State court of competent jurisdiction by any one or more <u>employees</u> for and in behalf of himself or themselves and other employees similarly situated.  No <u>employee</u> shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added).

Thus, "one must be an employee of a covered employer to bring an action under the FLSA." Lang v. DirecTV, Inc., No. 10-1085, 2011 WL 6934607, at *2 (E.D. La. Dec. 30, 2011). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), while an employee is "any individual employed by an employer." Id. § 203(e)(1). To "employ" means "to suffer or permit to work." Id. § 203(g).

In the instant motion, plaintiffs seek to certify a Section 216(b) class consisting of all workers who:

> (a) worked for O'Brien's Response Management, Inc. at any site on the BP Deepwater Horizon MC252 oil spill response between April 21, 2010 and January 1, 2011;
> (b) were classified as independent contractors;
> (c) were paid a day-rate;
> (d) worked over forty hours in at least one workweek without receiving overtime pay; and
> (e) performed duties tracking oil spill response personnel and/or equipment, and/or assisted in managing and/or tracking the resources used in the response.

Record Doc. No. 19, at p. 1.

The Fifth Circuit in Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995), overruled in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), approved a two-step, conditional certification process for a collective action brought pursuant to Section 216(b) of the FLSA.[1]  Under this procedure, which was based on Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987), the district court first determines whether the named plaintiff is "similarly situated" to the proposed class members, as required by Section 216(b).  Mooney, 54 F.3d at 1212; accord Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010); Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915 n.2 (5th Cir. 2008).

The Fifth Circuit in Mooney also approved another model of determining Section 216(b) certification, which was based on Shushan v. Univ. of Colo., 132 F.R.D. 263 (D.

---

[1] Mooney was a collective action brought under the Age Discrimination in Employment Act, which incorporates Section 216(b) of the FLSA. Id. (citing 29 U.S.C. § 626(b)). Thus, collective action cases brought under the Age Discrimination in Employment Act are persuasive when interpreting Section 216(b) of the FLSA.

Colo. 1990). "Shushan espouses the view that § [216(b)] merely breathes new life into the so-called 'spurious' class action procedure previously eliminated from Fed. R. Civ. P. 23. . . . In other words, the court looks at 'numerosity,' 'commonality,' 'typicality' and 'adequacy of representation' to determine whether a class should be certified." Mooney, 54 F.3d at 1214.

Although the Fifth Circuit has refused to endorse either of the two models as the preferred method, district courts in this circuit agree that "the Lusardi approach has been 'embraced' more often in the Fifth Circuit than the 'Spurious Class Action' [approach] found in Shushan." England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 509 (M.D. La. 2005) (quoting Basco v. Wal-Mart Stores, Inc., No. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004)); accord White v. Integrated Elec. Techs., Inc., No. 11-2186, 2013 WL 2903070, at *3 (E.D. La. June 13, 2013); West v. Lowes Home Ctrs., Inc., No. 6:09-1310, 2010 WL 5582941, at *4 (W.D. La. Dec. 16, 2010), report & recommendation adopted, 2011 WL 126908 (W.D. La. Jan. 14, 2011) (citing Lang v. DirecTV, Inc., 735 F. Supp. 2d 421 (E.D. La. 2010)). Accordingly, I will use the Lusardi approach approved in Mooney.

The FLSA does not define "similarly situated," and the Fifth Circuit has "not ruled on how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single § 216(b) action." Acevedo, 600 F.3d at 518-19. The cases that have interpreted this section of the FLSA

are remarkable in that they do not set out a definition of "similarly situated," but rather they define the requirement by virtue of the factors considered in the "similarly situated" analysis. In other words, this line of cases, by its nature, does not give a recognizable form to an ADEA [or FLSA] representative class, but lends itself to ad hoc analysis on a case-by-case basis.

Mooney, 54 F.3d at 1213. Thus, under the Lusardi approach,

> the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision–usually based only on the pleadings and any affidavits which have been submitted–whether notice of the action should be given to potential class members.
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, [FN8] and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>> [FN8]  At the notice stage, courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination [or a violation of the FLSA].

Id. at 1213-14 & n.8 (quotations and citations omitted) (emphasis added).

Under this lenient, two-step process, if conditional certification is granted, the employer later may file a motion for decertification after more extensive discovery has been completed.

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are

>similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives–i.e. the original plaintiffs–proceed to trial on their individual claims.

Id. at 1214.

The issue presented by plaintiffs' motion at this conditional certification stage is whether Prejean is "similarly situated" to the class members whom he seeks to represent. Because the court's analysis is an ad hoc one, based on the facts of this particular case, other decisions that have conditionally certified, declined to certify or decertified conditional classes are not extremely useful in determining whether plaintiff is "similarly situated" to potential class members.

The cases in which conditional certification has been granted or upheld are clear that the "similarly situated" standard at the initial conditional certification stage is lenient, plaintiff's burden is not heavy, the evidence needed is minimal and the existence of some variations between potential claimants is not determinative of lack of similarity. E.g., Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 535-36 (3d Cir. 2012) (citing Symczyk v. Genesis HealthCare Corp., 656 F.3d 189 (3d Cir. 2011)); Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260-61 (11th Cir. 2008); Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217-19 (11th Cir. 2001); Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102, 1105 (10th Cir. 2001); Mooney, 54 F.3d at 1213-14; White, 2013 WL 2903070, at *3; Lang, 2011 WL 6934607, at *3; Baricuatro v. Ind. Personnel &

Mgmt. Servs., Inc., No. 11-2777, 2012 WL 5472302, at *1-2 (E.D. La. Nov. 9, 2012); West, 2010 WL 5582941, at *7-9.

At a minimum, there must be "meaningful 'identifiable facts or legal nexus [that] bind the claims,'" Simmons v. T-Mobile, No. H-06-1820, 2007 WL 210008, at * 8 (S.D. Tex. Jan. 24, 2007) (citation omitted), "so that hearing the cases together furthers the purposes of . . . § 216, is fair to both parties, and does not result in an unmanageable trial." Falcon v. Starbucks Corp., 580 F. Supp. 2d 528, 535 (S.D. Tex. 2008). "Courts have repeatedly stressed that Plaintiffs must only be similarly–not identically–situated to proceed collectively." Id. at 534 (citing Hipp, 252 F.3d at 1217; Reyes v. Tex. EZPawn, L.P., No. V-03-128, 2007 WL 101808 , at *1 (S.D. Tex. Jan. 8, 2007); Hill v. Muscogee Cnty. Sch. Dist., No. 4:03-CV-60, 2005 WL 3526669, at *2 (M.D. Ga. Dec. 20, 2005); Basco, 2004 WL 1497709, at *5; Frank v. Capital Cities Commc'ns, Inc., No. 80-CIV-2188-CSH, 1983 WL 643, at *2 (S.D.N.Y. Oct. 11, 1983)).

Since Prejean filed this lawsuit, 48 more workers have opted in as plaintiffs, which "is persuasive evidence that a putative class does exist." Shaffner v. Cash Register Sales & Serv. of Houston, Inc., No. H-05-2064, 2006 WL 1007542, at *1 (S.D. Tex. Apr. 17, 2006); accord Simmons, 2007 WL 210008, at * 9 (citing Mooney, 54 F.3d at 1214 n.8; Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1568 (11th Cir. 1991)). Prejean's evidence also includes declarations from himself and 19 other opt in plaintiffs, stating

that each is aware of other workers who have expressed interest in joining a collective action.

Plaintiff's evidence shows that O'Brien's hired him and all proposed class members and classified them as independent contractors until it re-classified them as employees on January 1, 2011. The evidence establishes that proposed class members were assigned to monitor, manage or track the personnel and equipment involved in the oil spill cleanup operations; to report on the status of those efforts to their superiors, who had also been hired by O'Brien's; and to follow certain policies regarding their work conditions and performance. Defendant does not dispute that Prejean and the proposed class members were required to work 12-hour (or more) days for more than five days each week, submitted time sheets to O'Brien's and were paid a fixed daily rate by O'Brien's without receiving any overtime pay.

In an attempt to show that the workers were independent contractors rather than its employees, O'Brien's disputes the degree of control it exercised over each putative class member's working conditions. O'Brien's argues that the oil spill response was directed by a comprehensive federal response structure, which, as the ultimate authority, dictated daily schedules, reporting protocol and the creation and elimination of job positions. It has presented declarations from other workers regarding their own experiences that support its argument that the workers were independent contractors who were not controlled by defendant.

O'Brien's contends that Prejean is not similarly situated to the putative class members because the members worked in approximately 50 different positions with different duties in five different states. Defendant points out that at least six (6) of the opt in plaintiffs who provided declarations in support of plaintiff's motion for conditional certification held different job titles than and performed duties that differed from those performed by Prejean and by each other. O'Brien's also argues that the court must examine the factors involved in making a legal determination whether a worker is an independent contractor or an employee before deciding whether to conditionally certify a collective action, and that this inquiry requires such individualized analysis as to defeat the similarity requirement. Alternatively, O'Brien's argues that, if the court finds that conditional certification is appropriate, the scope of the class should be narrowed to only those individuals who "performed the positions of staging area manager, yard supervisor, and/or equipment supervisor and/or performed similar job duties," which defendant contends are similar to Prejean's job positions and duties. Defendant's memorandum in opposition, Record Doc. No. 21 at p. 21.

"Geographic commonality is not necessary to meet the 'similarly situated' requirement for a FLSA collective action; instead the focus is on whether the employees were impacted by a common policy." Heeg v. Adams Harris, Inc., 907 F. Supp. 2d 856, 863 (S.D. Tex. 2012) (quotations omitted) (citing Vargas v. Richardson Trident Co., No. H-09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (collecting cases)). "'If

there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate.'" Id. (quoting Rueda v. Tecon Servs., Inc., 2011 WL 2566072, at *4 (S.D. Tex. June 28, 2011)). I find that the geographic dispersion, allegedly over five states, of the putative collective action members in this case does not render them dissimilar for purposes of conditional certification.

> In cases of workers who were allegedly misclassified as independent contractors,
>
> [c]ourts are split as to whether the economic realities test should be used to determine whether to conditionally certify an FLSA action concerning an allegedly wrongful independent contractor designation. To determine whether a worker is an employee or an independent contractor, courts in this Circuit generally use as a guide five, non-exclusive factors: (a) the permanency of the relationship; (b) the degree of control exercised by the alleged employer; (c) the skill and initiative required to perform the job; (d) the extent of the relative investments of the worker and the alleged employer; and (e) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer. Courts in this district, however, have <u>typically declined to apply the economic realities factors or other individualized analyses at the conditional certification stage</u>.

Id. at 864 (citing Thibault v. Bellsouth Telecomm., Inc., 612 F.3d 843, 846 (5th Cir. 2010); Andel v. Patterson-UTI Drilling Co., 280 F.R.D. 287, 290 (S.D. Tex. 2012)) (quotations omitted) (emphasis added); accord Walker v. Honghua Am., LLC, 870 F. Supp. 2d 462, 470 (S.D. Tex. 2012); Scovil v. FedEx Ground Pkg. Sys., Inc., 811 F. Supp. 2d 516, 518-19 (D. Me. 2011).

Two judges in this court recently conditionally certified collective actions that involved alleged misclassification of independent contractors, without undertaking

12

evaluation of the five-factor economic realities or other individualized inquiry. Both judges held that they

> need not decide at this juncture the exact nature of the employment relationship here. As in other actions where threshold employment questions existed, Plaintiffs have alleged enough to satisfy the initial burden at this stage. The fact that questions remain about the employment status of [the employer] regarding the named plaintiffs and proposed class of plaintiffs will not stop this Court from considering the propriety of conditionally certifying the collective action. <u>Although courts have later decertified actions because of employment relationship questions, this does not alter the present burden at the conditional certification stage</u> considered here.

Lang, 2011 WL 6934607, at *3 (emphasis added); accord White, 2013 WL 2903070, at *5 (quoting Lang, 2011 WL 6934607, at *3). I agree with these judges and the other courts that have held that, while defendant has raised possibly legitimate questions about the employment status of plaintiff and the proposed class members, such an inquiry is better addressed at the decertification stage after discovery has occurred, when the court will be in a position to scrutinize all of the evidence in greater detail.

Plaintiff's allegations and evidence of defendant's generally applicable policy are sufficient to satisfy the <u>lenient</u> standard for conditional certification at the notice stage. I find that Prejean has established the minimum requirements for a classification and pay policy or practice that was generally applicable to all potential collective action members. See Foraker v. Highpoint Sw., Servs., L.P., No. H-06-1856, 2006 WL 2585047, at *4 (S.D. Tex. Sept. 7, 2006) ("Plaintiffs sue over a pay policy that was and is generally

applicable to all workers to whom Plaintiffs propose to send notice. Plaintiffs have met the lenient standard for notice and conditional certification in a FLSA case . . . ."); Aguirre v. SBC Commc'ns, Inc., No. H-05-3198, 2006 WL 964554, at *5 (S.D. Tex. Apr. 11, 2006) (citing England, 370 F. Supp. 2d at 507) ("A court may deny plaintiffs' right to proceed collectively [at the first step] if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice."); Hill, 2005 WL 3526669, at *3 (citations omitted) ("if there is sufficient evidence of an employer's pattern of subjecting employees to the same improper practice, that would be sufficient to warrant a finding of similarity justifying collective adjudication"); O'Brien v. Ed Donnelly Enters., Inc., No. 2:04-CV-00085, 2006 WL 3483956, at *3 (S.D. Ohio Nov. 30, 2006) (citations omitted) ("Plaintiffs must demonstrate that the Defendants had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs."); Bonilla v. Las Vegas Cigar Co., 61 F. Supp. 2d 1129, 1139 n.6 (D. Nev. 1999) (citations omitted) ("In order to be similarly situated, the action must not be distinct and specific to individual plaintiffs; rather, there must be some general policy or practice."). Despite individual variations in the job duties, Prejean has made substantial allegations that O'Brien's had a single policy, applicable to all spill response workers in the putative class who routinely worked more than 40 hours per week, of classifying them improperly as independent contractors and paying them a flat daily rate without paying for overtime work.

Therefore, considering the "<u>lenient</u> standard" for conditional certification and the "minimal evidence" necessary at this stage, I preliminarily find that Prejean and the other opt in plaintiffs are similarly situated to other oil spill response workers within the potential collective action class. Whether that finding will withstand further discovery, evidence development and legal analysis at the decertification or other later stage of this lawsuit remains to be seen. Based on the evidence presented at this time, and applying the <u>low</u> standard of proof imposed by the two-step procedure for collective action certification, IT IS RECOMMENDED that plaintiff's motion be GRANTED and that a collective class under Section 216(b) be <u>conditionally</u> certified, consisting of

> all workers who:
> (a) worked for O'Brien's Response Management, Inc. at any site on the BP Deepwater Horizon MC252 oil spill response between April 21, 2010 and January 1, 2011;
> (b) were classified as independent contractors;
> (c) paid a day-rate;
> (d) worked over forty hours in at least one workweek without receiving overtime pay; and
> (e) performed duties tracking oil spill response personnel and/or equipment, and/or assisted in managing and/or tracking the resources used in the response.

II.     <u>PLAINTIFF'S PROPOSED NOTICE TO THE POTENTIAL CLASS</u>

The main reason for conditional certification is to provide notice.

> For purposes of § 216(b) of the FLSA, the term "certification" really refers to the process by which the court facilitates notice to potential plaintiffs of the action and of their opportunity to opt in. . . . . At this first stage, which is typically referred to as the notice stage, the district court decides, usually based on the pleadings and affidavits of the parties, whether to provide

notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying the collective action.

Clay v. Huntington Ingalls Inc., No. 09-7625, 2011 U.S. Dist. LEXIS 155351, at *8 (E.D. La. Sept. 29, 2011) (citing Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989); Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010); Mooney, 54 F.3d at 1213-14; Lima v. Int'l Catastrophe Solutions, Inc., 493 F. Supp. 2d 793, 797-98 (E.D. La. 2007)); accord Acevedo, 600 F.3d at 519; Foraker, 2006 WL 2585047, at *3.

Prejean seeks approval of (1) a proposed notice form that sets forth the scope of the litigation and informs putative class members of their rights, and (2) a proposed consent form that recipients may sign and return to opt in to this collective action. Record Doc. No. 19-3. He requests a 60-day notice period from the date the notice is sent within which class members may submit their consent forms.

Although defendant does not oppose the requested time period, it argues that plaintiff's proposed notice is misleading and biased. O'Brien's asks that the parties be given 30 days to confer and submit a revised, joint notice. I agree that this is necessary.

Accordingly, I recommend that, if Judge Barbier adopts this report and recommendation and conditionally certifies a collective action, the parties be ordered to meet and confer and attempt to reach an agreed upon notice. Within 30 days after entry of that order, to the extent that they can agree upon a notice and a consent form, the parties must submit their proposed forms to the court via a joint letter. By the same date,

16

the parties may file supplemental memoranda regarding any portions of the notice and the proposed deadlines as to which they have not agreed.  The court will thereafter enter an order regarding the form of notice.

Prejean asks the court to order O'Brien's to produce to him within ten (10) days after entry of the court's certification order a computer-readable data file containing all potential opt-in plaintiffs' names; last known mailing addresses, e-mail addresses, and telephone numbers; work locations; and dates of employment.  Defendant asserts that it should be allowed 30 days to produce such information.  It argues that production of telephone numbers and e-mail addresses is unnecessary because adequate notice will be issued by mail and because of privacy concerns implicit in the requested information.  In his reply memorandum, Prejean responds that notice by both first class mail and e-mail is important to ensure that class members receive actual notice.  He contends that this procedure has been routinely approved by district courts, including this one.  Prejean also asks that class members be afforded the option of executing their consent forms online through Docusign, an electronic signature service.

I find that production of e-mail addresses is not significantly more invasive of class members' privacy than is production of their home addresses and that notice by both e-mail and first-class mail is both routine and reasonably calculated to accomplish the broad remedial goals of the notice provision of the FLSA.  I further find that the 10-

day period for production of class member information requested by plaintiff is too short and that the 30-day period requested by defendant is appropriate.

O'Brien's next argues that work locations and dates of employment are irrelevant at this stage and that plaintiff should not be allowed to circumvent the usual discovery process by acquiring this information from defendant now. Defendant also contends (based solely on a conclusory declaration by one of its attorneys) that it would be extremely burdensome to find the information because the information is not readily available. Nonetheless, I find that work locations and telephone numbers are not necessary to accomplish notice at this conditional certification stage.

Accordingly, I recommend that defendant be ordered to produce to plaintiff, within 30 days after entry of the district judge's order granting conditional certification, a computer-readable data file containing all potential opt-in plaintiffs' names and last known mailing <u>and</u> e-mail addresses.

<u>CONCLUSION</u>

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion to certify a collective class be GRANTED IN PART and that a collective class be <u>conditionally</u> certified, consisting of

> all workers who:
> (a) worked for O'Brien's Response Management, Inc. at any site on the BP Deepwater Horizon MC252 oil spill response between April 21, 2010 and January 1, 2011;
> (b) were classified as independent contractors;

(c) paid a day-rate;
(d) worked over forty hours in at least one workweek without receiving overtime pay; and
(e) performed duties tracking oil spill response personnel and/or equipment, and/or assisted in managing and/or tracking the resources used in the response.

IT IS FURTHER RECOMMENDED that, if this report and recommendation is adopted and a collective action is conditionally certified, the parties be ordered to meet and confer within 30 days after entry of that order and attempt to reach an agreed upon notice and consent form. IT IS FURTHER RECOMMENDED that, to the extent that the parties can agree upon forms of notice and consent, they should be ordered to submit their proposed forms to the court via a joint letter no later than 30 days after the conditional certification order. IT IS FURTHER RECOMMENDED that, by the same date, the parties may file supplemental memoranda regarding any portions of the notice and the proposed deadlines as to which they have not agreed. The court will thereafter enter an order regarding the form of notice.

IT IS FURTHER RECOMMENDED that defendant be ordered to produce to plaintiff, within 30 days after entry of the presiding district judge's order, a computer-readable data file containing all potential opt-in plaintiffs' names <u>and</u> last known mailing <u>and</u> e-mail addresses.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

19

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____7th_____ day of October, 2013.

                                                 JOSEPH C. WILKINSON, JR.
                                               UNITED STATES MAGISTRATE JUDGE

---

[2] <u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.